Jeremiah Welch (State Bar No. 180370)
jwelch@sdvlaw.com
Caitlin Rabiyan (State Bar No. 333841)
crabiyan@sdvlaw.com
SAXE DOERNBERGER & VITA P.C.
Two Better World Circle, Suite 200
Temecula, CA  92590
Ph: (951) 365-3145; Fax: (203) 287-8847

Attorneys for Plaintiffs,
SUNKIST GROWERS, INC. AND
FRUIT GROWERS SUPPLY COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNKIST GROWERS, INC., a California agricultural cooperative; FRUIT GROWERS SUPPLY COMPANY, a California agricultural cooperative<br><br>Plaintiffs,<br><br>vs.<br><br>ACGS MARINE INSURANCE COMPANY, an Illinois corporation<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT; DEMAND FOR JURY TRIAL**<br><br>Date:<br>Time:<br>Dept.: |

WHEREFORE Plaintiffs SUNKIST GROWERS, INC. (hereinafter, "Sunkist") and FRUIT GROWERS SUPPLY COMPANY (hereinafter, "FGS") (collectively the

"Insureds"), by and through their attorneys, Saxe Doernberger & Vita, P.C., hereby complain against Defendant ACGS MARINE INSURANCE COMPANY (hereinafter "Allianz"), and allege upon information and belief as follows:

## INTRODUCTION

1. This dispute arises out of the wrongful refusal by Allianz to provide coverage to the Insureds for loss associated with an elevated rate of pitting to certain fruit shipped overseas. Allianz has refused to abide by its contractual obligations, causing substantial harm to the Insureds. By this action, the Insureds seek redress for Allianz's wrongful refusal to honor its contractual obligations.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is founded in diversity of citizenship pursuant to 28 U.S.C. § 1332, based on the facts more specifically alleged in paragraphs 5 through 7 below.

3. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

4. Venue lies in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to this action occurred in Los Angeles County, California, and/or a substantial part of the insurance policy that is the subject of this action was entered into in Los Angeles County, California.

## THE PARTIES

5. Sunkist is and was an agricultural cooperative organized under the laws of the State of California, with its principal place of business located at 27770 N. Entertainment Drive, Valencia, California 91355, and was, at all times mentioned herein, authorized to transact business in the State of California.

6. FGS is and was an agricultural cooperative organized under the laws of the State of California, with its principal place of business located at 27770 N. Entertainment Drive, Valencia, California 91355, and was, at all times mentioned herein, authorized to

transact business in the State of California.

7. The Insureds are informed and believe, and thereupon allege that, at all relevant times herein, Allianz was and is a corporation in good standing duly organized and existing under the laws of the State of Illinois with its principal place of business located at 225 West Washington Street, Suite 1800, Chicago, Illinois 60606, and authorized by the Secretary of State of the State of California to conduct business in California.

## FACTUAL ALLEGATIONS

### A. Sunkist and FGS Business Operations

8. Sunkist is a sales and marketing agricultural cooperative entirely owned by and operated for the California and Arizona citrus growers who make up its membership (the "Member-Growers").

9. Sunkist serves as the sales intermediary between the Member-Growers and customers by negotiating the sale of fruit grown by the Member-Growers, and then arranging the fruit's delivery, while receiving payments for the fruit on the Member-Growers' behalf.

10. Sunkist's Member-Growers are required to sell fruit grown on designated acreage through Sunkist. As a part of this requirement, the Member-Growers have contracts with various packinghouses. These packinghouses are either cooperatives owned entirely by the Sunkist Member-Growers, or they have independent owners but are bound by contract to process only fruit grown by Members.

11. The fruit is processed and packed at the packinghouses for shipment under the Sunkist brand name.

12. FGS is a supply-side cooperative that, among other things, manufactures and procures packing supplies for the Sunkist member growers. Specifically, through its Packing Services business unit, FGS provides wax, chemicals, equipment, and related services to facilitate the washing and packing of fruit at the packinghouse facilities.

13. Among its services, FGS makes recommendations to the packinghouses

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF;
DEMAND FOR JURY TRIAL
3

about applying certain chemical treatments to the fruit, in the form of a wax coating, to postpone rot and preserve the fruit during shipping until it arrives at its destination.

14. FGS also provides the chemical formulae and various chemical components necessary for the chemical treatment of the fruit, providing on-site technicians to advise and assist as needed with application.

15. The packinghouses themselves purchase, mix, and apply the chemical treatments to the fruit with their own labor as a part of preparing the fruit for shipment.

**B. The Claim**

16. Allianz is an insurance company engaged, in part, in the business of providing first-party ocean marine cargo coverage for products from shipment to delivery.

17. On or about November 1, 2020, in consideration of premium paid by the Insureds, Allianz issued an Ocean Marine Cargo Policy, bearing Policy No. OC96429000, (the "Policy"). A true and accurate copy of the Policy is attached hereto as **EXHIBIT A**.

18. On or about May 2, 2022, Sunkist began to receive notification from overseas customers that certain batches of shipped fruit exhibited a significantly high degree of rind pitting, rendering them unsuitable for sale. Specifically, the individual oil glands in numerous citrus rinds had collapsed, causing pits in the rinds, surface browning, and dark lesions in the rinds around the oil gland of the fruit.

19. As required by Sunkist's customer claims policy, the customers documented the damaged condition of the fruit on arrival, through reports and pictures prepared by licensed marine surveyors. The pitting documented by the survey reports and pictures was not present when the fruit left Sunkist's custody.

20. As required by its claims policy and its established business practices with the customers in question, Sunkist reimbursed the customers for the value of the damaged fruit in the total amount of approximately $3,200,000 (the "Loss").

21. Following the Loss, the Insureds investigated the cause of the pitting.

22. The Insureds' investigation revealed that the shipments associated with the pitting claims had been treated at the packinghouses with a new composition of

postharvest fungicide wax.

23. Specifically, the new formula replaced the previous fungicide, Thibendazole ("TBZ"), with a different fungicide, Graduate A+, in an effort to combat the increasing resistance of certain molds to TBZ.

24. After being treated with the new postharvest fungicide wax, the fruit was then shipped to foreign ports on ships at temperatures between 37 to 41 degrees Fahrenheit, in compliance with industry standards and Sunkist shipping instructions.

25. The shipping times and temperatures for each of the shipments were monitored and all were within the expected parameters.

26. Unbeknownst to the Insureds at the time, the previously used TBZ formula had a side effect of protecting the fruit from chilling damage over time. Removing the TBZ inadvertently left the fruit without sufficient protection against the normal refrigeration temperatures for the time required for the fruit's transoceanic journey.

27. Upon arrival at the foreign ports, the fruit that had been treated with the new Graduate A+ formula demonstrated pitting damage consistent with exposure to low temperatures.

28. During the investigation, the Insureds found that certain domestically shipped fruit, which had been treated with the same wax formulation but had not been exposed to the same time and temperature conditions as the internationally shipped fruit, did not demonstrate an elevated level of pitting.

29. Further, experiments conducted by the Insureds showed that fruit samples treated with the new fungicide and set aside prior to the shipments ("Holdback Fruit"), when stored at the same temperature for the same amount of time as the internationally shipped fruit, showed the same degree of pitting as the effected fruit.

30. These experiments also indicate that other Holdback Fruit, stored for the same duration but at a *higher* temperature than the internationally shipped fruit, showed no increased pitting.

31. These experiments confirm that the pitting damage was caused by chilling

and that the damage to the fruit happened during the ocean voyage. But for the time and temperature of the ocean voyage, the fruit would not have been damaged.

32. On July 12, 2022, the Insureds, through their broker, Arthur J. Gallagher & Co. ("Gallagher"), notified Allianz of the Loss (the "Claim").

33. On August 2, 2022, Allianz issued a reservation of rights letter, requesting certain documents and information surrounding the facts and circumstances.

34. On August 25, 2022, the Insureds presented Allianz with the findings of its root cause investigation, supported by expert analysis by Patrick Brecht, Ph.D., a biochemist and world-renowned expert in fruit preservation.

35. On October 13, 2022, Allianz advised the Insureds by letter that it was denying coverage for the Claim under the Policy. A true and accurate copy of this letter is attached hereto as **EXHIBIT B**.

36. On November 17, 2022, Gallagher, on behalf of the Insureds, sent an email responding to Allianz's denial, outlining the basis for the Insureds' coverage under the Policy, and requesting reconsideration. A true and accurate copy of the email is attached hereto as **EXHIBIT C.**

37. On December 1, 2022, Allianz replied to Gallagher's email and request for consideration, reasserting its coverage denial position. A true and accurate copy of the email is attached hereto as **EXHIBIT D.**

## THE POLICY

38. The Policy is a first-party all-risk commercial cargo marine policy that insures "against all risks of physical loss or damage from any external cause, except those risks as may be excluded by the warranties or exclusions specified in this policy…" to products the Insureds prepare, pack, ship, and store.

39. The Policy states that it covers products "intended for shipment (i) during the loading process prior to dispatch (including into or onto containers… or other conveyances) and continuing thereafter while awaiting the commencement of the transit… and (iii) after arriving at the ultimate destination, and continuing thereafter, until unloaded

(including from containers… or other conveyances) and throughout the unloading process."

40. The Policy further states that coverage "attaches from the time the goods and/or merchandise and/or property leave the originating warehouse, store or other location for the commencement of the transit and continues until the goods and/or merchandise and/or property are delivered to the final warehouse, store or other location at the destination . . ."

41. The Policy provides limits of $8,000,000 per any one vessel conveyance.

42. The Policy lists Sunkist and FGS as Named Insureds.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT

43. The Insureds reallege and incorporate by reference each and every allegation set forth above in this Complaint.

44. A dispute has arisen between the Insureds and Allianz regarding whether Allianz is obligated to pay benefits to the Insureds for the Loss.

45. The Insureds allege that the terms of the Policy provide coverage for the Loss.

46. An actual case and justiciable controversy presently exists between the Insureds, in their direct capacity as Named Insureds under the Policy, and Allianz, as to the duties and obligations of Allianz under the Policy, regarding, among others things, whether Allianz is obligated to provide coverage to the Insureds for the Loss pursuant to the Policy and whether Allianz's interpretations of the Policy, as asserted in its October 13, 2022 letter denying coverage, are correct.

47. Pursuant to 28 U.S.C. section 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, a judicial determination of the right and duties of the Insurers, and whether Allianz is obligated to provide coverage to the Insureds for the Loss pursuant to the Policy, is necessary and appropriate so that the Insureds, in their capacity as Named Insureds, and Allianz, can ascertain their respective rights under the Policy. The Insureds, in their capacity as Named Insureds, additionally desire judicial declaration that Allianz is

obligated under the Policy to provide coverage to the Insureds for the Loss.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

48. The Insureds reallege and incorporate by reference each and every allegation set forth above in this Complaint.

49. In consideration of premiums paid by the Insureds, Allianz duly executed and delivered the Policy to the Insureds.

50. The Policy is a valid and enforceable written contract of insurance, which was in full force and effect at all relevant times referenced herein.

51. The Insureds are, and at all relevant times were, in compliance with all conditions precedent for coverage under the Policy, including timely payment of all premiums due.

52. The Insureds performed all conditions and covenants on their part to be performed under the Policy, except as excused, waived or prevented by Allianz.

53. The Insureds suffered physical loss of and damage to insured property, i.e., the internationally shipped fruit, not otherwise excluded under the Policy.

54. Allianz is obligated, pursuant to the terms of the Policy, to provide the Insureds with coverage for all risks of physical loss of and damage to insured property from any external cause, except those risks which may be excluded by the Policy.

55. Despite multiple demands to fulfill its obligations under the Policy as set forth above, Allianz breached the Policy by, among other things, unreasonably and repeatedly refusing to provide coverage for the Loss.

56. As a direct and proximate result of Allianz's conduct, the Insureds, in their capacity as Named Insureds, have suffered, and continue to suffer, damages, including but not limited to $3,2000,000 for direct physical loss to and damage of covered property, and fees, costs and other expenses to obtain the benefits of the Policy.

///

///

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF;
DEMAND FOR JURY TRIAL

**PRAYER FOR RELIEF**

WHEREFORE, the Insureds pray for judgment against Allianz as follows:

1. A declaration of the rights and obligations of the parties under the Policy, including Allianz's obligation to pay benefits due and owing to the Insureds under the Policy;

2. Monetary damages associated with the Loss in the amount of $3,200,000, or in an amount according to proof;

3. Pre-judgment and/or post judgment interest as permitted by law;

4. Attorneys' fees and costs;

5. Punitive damages; and

6. All other legal and equitable relief that this Court deems just and proper.

**JURY DEMAND**

WHEREFORE, the Insureds hereby demand a trial by jury for all claims herein for which a jury is permitted.

Dated: March 6, 2023                                  **SAXE DOERNBERGER & VITA, P.C.**

By: _____
Jeremiah M. Welch, Esq.
Attorneys for Plaintiffs,
SUNKIST GROWERS, INC.
FRUIT GROWERS SUPPLY COMPANY