UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SUNKIST GROWERS, INC. et al., | Case No. 2:23-cv-01643-SB-ADS |
| Plaintiffs, |  |
| v. | ORDER DENYING DEFENDANT'S MOTION AND GRANTING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT [DKT. NO. 34] |
| AGCS MARINE INSURANCE COMPANY, |  |
| Defendant. |  |

This case involves over-chilled oranges, a fungicide with an unknown positive side effect, and a maritime insurance policy. Plaintiffs Sunkist Growers, Inc. and Fruit Growers Supply Company ship oranges all over the world. In early 2022, Plaintiffs changed the brand of pre-shipping fungicide they applied to the outside of the orange to one with increased effectiveness against mold. Over the next four months, $3.2 million worth of damaged oranges arrived at various ports in Asia. As it turns out, the old fungicide had an unknown side effect: it allowed the oranges to sustain lower temperatures for longer periods without suffering "rind pitting," a form of chilling injury. The new fungicide lacked this side benefit, and a significant portion of the oranges that were shipped with the new fungicide arrived with rind pitting. When Plaintiffs filed a claim under their marine cargo insurance policy with Defendant AGCS, Defendant denied it, and this suit followed. The parties now cross-move for summary judgment. The Court held a hearing on the motion on January 19, 2024, at which both parties submitted on the Court's tentative opinion. Because the Court finds that the policy covers the loss and that a single deductible applies, it denies Defendant's motion and grants Plaintiffs' cross-motion for summary judgment.

1

I.

The material facts are agreed upon.  The parties' joint appendix of facts (JAF) contains only 22 facts, and all but four of them are undisputed.  The disputes over the four are minor clarifications rather than material disagreements.  *See, e.g.*, Dkt. No. 34-1, JAF 14 (disputing whether set temperature of 37–41 degrees Fahrenheit was "standard" as opposed to "normal and customary").  Neither party objects to any of the evidence presented.  Dkt. No. 34-3, Joint Appendix of Objections.  The motions concern a legal dispute arising from the factual context below.

Plaintiffs are the named insured parties on an ocean marine cargo insurance policy issued by Defendant in November 2021.[1]  Dkt. No. 1 ¶¶ 17, 42.  The policy covers plaintiffs' marine cargo up to a maximum of $8,000,000 per any one vessel, with a $500,000 deductible for each "adjusted claim."  Dkt. No. 34-2 Ex. 4 (Policy) at 004–05.  The policy covers all shipments of goods made after the effective date.  *Id.* at 004.  The policy is an "all-risks" policy, insuring goods "against all risks of physical loss or damage from any external cause" except for those specifically excluded.  *Id.* ¶ 10.1.  The insurance covers losses occurring "warehouse to warehouse," meaning coverage applies from the time the goods leave the originating warehouse, through transit, until the goods arrive at the destination warehouse.  *Id.* ¶ 11.1.

To keep oranges from spoiling during shipping, Plaintiffs ship them in refrigerated vessels.  If an orange is kept at too cold a temperature for too long, it can suffer a chilling injury known as rind pitting, where pits form in the oil glands of the rinds, and the surface of the orange develops brown spots. Dkt. No. 34-1, JAF Additional Facts 2–3; Dkt. No. 1 ¶ 18.  Plaintiffs' normal and customary temperature for shipping oranges had been 37–41 degrees Fahrenheit, and Plaintiffs had no significant issues with rind pitting under these conditions prior to May 2022.  Dkt. No. 34-1, JAF 9, 14–15.

Plaintiffs apply fungicide to the outside of oranges before shipping them. Dkt. No. 34 at 2.  Prior to the events of this case, Plaintiffs had been using a fungicide known as TBZ.  *Id.*  When TBZ-resistant strains of mold began to increase in prevalence, Plaintiffs switched to using a different fungicide (known as

---

[1] One section of the policy says November 1, 2020, but that appears to be in error based on the signature dates and other references elsewhere in the policy.  Dkt. No. 34-2 Ex. 4 (Policy).

Graduate A+) at four of its fruit-packing houses.  Dkt. No. 1 ¶ 22; Dkt. No. 34-1, JAF 1.  Unbeknownst to Plaintiffs, TBZ had the side effect of suppressing rind pitting while Graduate A+ did not.  Dkt. No. 34-1, JAF 12, 15.

Over the next four months, Plaintiffs began to receive customer complaints of rind pitting.  Dkt. No. 34 at 2.  The complaints involved more than 300 different customer orders, transported on 57 different ships, shipped to 11 different destination countries.  Dkt. No. 34-1, JAF 3–5.  Inspection of the oranges arriving at one port revealed that between 30–65% of the oranges in each container exhibited rind pitting.  Dkt. 34-2, Ex. 2 at 17–18.  All the damaged oranges could be traced back to the four packing houses where they were treated with Graduate A+.  Dkt. No. 1 ¶ 22.  Plaintiffs reimbursed their customers approximately $3,200,000 for their loss.  *Id.* ¶ 20.

In July 2022, Plaintiffs filed a claim under their marine cargo insurance policy.  Dkt. No. 1-2.  In October 2022, Defendant denied the claim, asserting that the loss was caused at the time fungicide was applied and thus occurred outside the policy's "warehouse to warehouse" coverage window.  *Id.*  In March 2023, Plaintiffs filed this lawsuit for declaratory relief and breach of contract.  Dkt. No. 1.  Defendant now moves for summary judgment on the grounds that the loss is not covered, and, in the alternative, that the deductible applies separately to each of the 57 shipments.  Dkt. No. 34.

## II.

Summary judgment is appropriate where the record, taken in the light most favorable to the opposing party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  The moving party has the initial burden of establishing that there are no disputed material facts.  *Id.* at 256.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed."  Fed. R. Civ. P. 56(e).  Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Arguments based on conjecture or unfounded belief do not raise a genuine issue of material fact. Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *R.W. Beck & Assocs. v. City of Sitka*, 27 F.3d 1475, 1481 n.4 (9th Cir. 1994) (citing *Anderson*, 477 U.S. at 249).

III.

Defendant asserts that it is not liable for Plaintiffs' $3.2 million claim because the policy does not cover the loss, or, alternatively, because the separate shipments constitute losses for which separate deductibles apply.[2]

A.

Plaintiffs' marine cargo insurance policy insures "all goods and/or property of every description consisting principally of, but not limited to [fresh citrus fruits]." Dkt. No. 34-2 Ex. 4 ¶ 4.2; Declarations Page. The policy is an "all risks" policy that insures the goods and property "against all risks of physical loss or damage from any external cause," except those excluded elsewhere. *Id.* ¶ 10.1. "The insurance attaches from the time the goods . . . leave the originating warehouse . . . for the commencement of the transit and continues until the goods . . . are delivered to the final warehouse . . . ." *Id.* ¶ 11.1. Here, Defendant argues that the loss is not covered primarily because its cause (which Defendant argues was the change in fungicide) occurred before the commencement of transit and thus outside the coverage window. In the alternative, if the Court finds the loss was caused by chilling rather than the change in fungicide, Defendant argues that the loss was not a "fortuitous" result—an insurance term of art discussed in more detail below. The Court analyzes each argument in turn.

---

[2] Defendant also argues that the loss is not covered under the insurance policy's second endorsement, which provides additional coverage for damage to perishables caused by refrigeration malfunction. Dkt. No. 34 at 25–28. Plaintiffs agree that there is no coverage under the second endorsement. *Id.* at 28–29. Thus, the Court does not address coverage under that endorsement.

1.

Defendant's primary argument is that the loss is not covered because its cause occurred before coverage attached.  This argument rests on two premises: first, that the loss was caused by not applying TBZ; and two, that "[a] loss that is caused by an event that takes place prior to the attachment of coverage is not covered under a marine insurance policy."  Dkt. No. 34 at 15; Dkt. No. 38 at 5 (same).  Both premises are faulty.

The question of causation in the maritime insurance context centers on proximate cause, which is further defined as the "efficient" or "dominant" cause, or the one "most nearly and essentially connected with the loss." [3] *Commodities Rsrv. Co. v. St. Paul Fire & Marine Ins. Co.*, 879 F.2d 640, 643 (9th Cir. 1989). Courts determine proximate cause based on "common sense and reasonable judgment as to the source of the losses." *Id.*  Where more than one cause contributes to a loss, the court must select one as the proximate cause. *Id.*

Defendant argues that the proximate cause of the rind pitting was the non-application of TBZ.  If the oranges had been treated with TBZ as previous shipments had been, the refrigeration would not have damaged them.  But while the change in fungicides may have been part of the causal chain, the Court cannot conclude it was the efficient or predominant cause.  The application of Graduate A+ instead of TBZ caused no damage to the oranges.  The oranges were saleable before and after the application of Graduate A+, and if the oranges had not been chilled, they would have remained saleable.  When the oranges were chilled, moreover, they responded exactly as any other orange fresh from the tree would have responded.

In short, Defendant's theory of proximate cause is unpersuasive.  Under this theory, the proximate cause of a chilling injury suffered by an orange anywhere in the world would not be refrigeration, but the failure to apply TBZ.  This is not a viable position.  Before refrigeration, the oranges were saleable.  After refrigeration, they were not.  Rind pitting is a type of "chilling injury," not damage

---

[3] Both parties agree that the Court should apply the following law (to the extent it exists) in the following order of priority:  federal maritime law, federal common law, and California state law.  Dkt. No. 34 at 10.  The parties do not identify any relevant, material differences among these legal sources.  In any event, the cases cited here are generally federal decisions made in the context of maritime insurance policies.

resulting from the application of fungicide.  The proximate cause of the rind pitting was the refrigeration of the oranges at 37–41 degrees Fahrenheit for the length of the journey.  Because the chilling took place on the voyage, the loss falls within the policy's coverage window.

But even if the proximate cause were the lack of TBZ, Defendant is incorrect in broadly asserting that "[a] loss that is caused by an event that takes place prior to the attachment of coverage is not covered under a marine insurance policy."  Although Defendant devotes a full section of its brief to discussing when the cause occurred, the language of the insurance policy makes no distinction based on the timing of the cause.  Instead, the policy applies during transit to insure "against all risks of physical loss or damage" and broadly defines the type of causes covered as "any external cause."  Dkt. No. 34-2 ¶ 10.1.  Defendant does not cite any provision in the policy limiting coverage to causes occurring during transit.  Instead, Defendant cites three cases: *Greene v. Cheetham*, 293 F.2d 933 (2d Cir. 1961); *Commercial Union Ins. Co. v. Sponholz*, No. 87-cv-4943, 1987 WL 49254 (N.D. Cal. 1987), *aff'd*, 866 F.2d 1162 (9th Cir. 1989); and *Goodman v. Fireman's Fund Insurance Company*, 600 F.2d 1040 (4th Cir. 1979).  None supports Defendant's position that the decision not to apply TBZ *before* shipping bars Plaintiffs from recovering on losses incurred *during* shipping.

In *Greene*, an insurer rejected an insured's claim under an all-risk policy for fish that had arrived in Rhode Island unfit for human consumption.  293 F.2d at 934.  The parties stipulated that there had been "no change in the condition of the fish after the fish were stowed on board ship at the [port of departure] until they were condemned at [the destination port]."  *Id.* at 935–36.  The court stated that an "all-risk" policy does not include "an undisclosed event that existed prior to coverage, or an event caused by the consummation during the period of coverage of an indwelling fault in the goods that had existed prior to that coverage."  *Id.* at 936–37.  "Otherwise the underwriters are in the position of either having to pay for undisclosed loss or damage actually caused prior to the time of coverage or uncontemplated loss or damage caused from deteriorating agents present within the goods when the goods were shipped."  *Id.* at 937.  Neither the stated rule nor its rationale applies here.  Unlike the fish in *Greene*, the oranges in this case were fit for human consumption before departing and became unfit during the voyage through the process of rind pitting, which had nothing to do with any defect in the oranges when they were shipped.  *Greene* does not counsel against recovery here.

In *Sponholz*, the Oakland police department seized a yacht as a stolen vessel.  1987 WL 49254 at *1.  The parties in possession of the yacht before seizure had

6

received defective title and filed a claim with their insurer. *Id.* The court granted summary judgment for the insurer on two separate grounds: the policy only covered physical loss or damage, which did not extend to a defective title; and the defective title, even if it were subject to coverage, occurred outside the policy period. *Id.* at *2. The Ninth Circuit affirmed summary judgment based on the first ground, concluding that "a casualty policy . . . cannot . . . be converted into a title insurance policy merely because the [plaintiffs] encountered a difficulty for which they were not insured." *Commercial Union Ins. Co. v. Sponholz*, 866 F.2d 1162 (9th Cir. 1989). *Sponholz* is readily distinguishable. Damaged oranges constitute a physical loss, and the damage occurred during the policy period.

In *Goodman*, a yacht sunk when water froze inside the cooling system after the yacht owner failed to properly winterize it. *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040, 1041–42 (4th Cir. 1979). The owner's insurer denied his claim under an "all risks" policy, and the yacht owner sued. *Id.* at 1042. The district court granted judgment for the insurer, which the Fourth Circuit affirmed. *Id.* at 1041. The panel identified the yacht owner's failure to winterize his yacht as the "predominant efficient cause" of the sinking, notwithstanding the intervening cause of freezing temperatures. *Id.* at 1042. Defendant here argues that the failure to properly prepare the yacht for winter is analogous to failing to apply TBZ to the oranges, and that the subsequent sinking of the yacht is like the subsequent chilling damage to the oranges. This analogy, however, ignores the holding in *Goodman*. The court did not hold that the yacht owner's negligence defeated coverage. On the contrary, the court concluded that the sinking of the yacht though the owner's negligence was covered under the "all risks" clause. *Id.* at 1042. But the Fourth Circuit held that the insurer properly denied coverage because the yacht owner violated an express warranty requiring him to properly winterize his yacht. *Id.* at 1042–43. *Goodman* thus fails to support Defendant's position that a marine insurance policy does not cover a loss if its cause occurred before coverage attached.

Thus, the fact that Plaintiffs applied a fungicide other than TBZ prior to the voyage does not remove Plaintiffs' loss from coverage. The cause of the loss was the chilling that occurred during the transport of the oranges—a plainly covered event. Defendant has not shown that Plaintiffs' failure to prevent the effects of chilling prior to shipment takes the loss outside the scope of a marine cargo insurance policy. *See AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 187 F. Supp. 3d 428, 447 (S.D.N.Y. 2016) (rejecting AGCS's reliance on cases that address a distinguishable circumstance in which "a loss is caused by internal defects in cargo that predate shipment").

2.

Since the loss was caused by the chilling, the Court must analyze Defendant's alternative argument: that the loss is not covered because it was not a "fortuitous" result of the chilling. An insured party must show that the loss results from a covered peril, and an "all risks" insurance policy like the one at issue here covers all perils, with one exception—a covered loss must be fortuitous. *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 814 (9th Cir. 2019) ("[E]very all-risk policy contains an unnamed exclusion–the loss must be fortuitous in nature.") (cleaned up). A fortuitous loss is one that is "dependent on chance, taking into account the knowledge of the parties." *Id.* at 814. Relevant factors include whether a loss was certain to occur, the parties' perception of the risk, and whether the loss was reasonably foreseeable. *Id.*

Defendant argues that rind pitting was not fortuitous because it was "scientifically known to result" from shipping the fruit at 37-41 degrees Fahrenheit. Dkt. No. 38 at 7. The decision to chill the oranges at that temperature was intentional, and the pitting was the "inevitable" and "certain[]" result of chilling the fruit to that temperature, it argues. *Id.* But certainty of the resulting damage—divorced from the parties' perception of that certainty—is not the correct standard. Every effect results from a cause, and the exact same cause, if repeated in the exact same conditions, will certainly and inevitably result in the exact same result. Defendant's standard would render all losses nonfortuitous in the sense that they certainly resulted from whatever caused them. Instead, in this context, courts analyze "whether it was reasonable for [the insured] to choose the conditions which may have caused the damage." *Underwriters Subscribing to Lloyd's Ins. Cert. No. 80520 v. Magi, Inc.*, 790 F. Supp. 1043 (E.D. Wash. 1991).

*Magi* directly addressed the question of whether damage to fruit is a fortuitous loss when caused by the intentional setting of climate-controlled storage conditions. In *Magi*, an apple grower stored a portion of its apple crop in a climate-controlled warehouse at specific temperature, oxygenation, and humidity levels selected by the owner. *Id.* at 1049. The apple grower attempted to follow the recommendations of a fruit handling expert in setting those conditions, but the apples were nevertheless damaged. *Id.* The grower's insurer denied its claim, arguing that the grower's actions were not fortuitous because they were intentional and because the damage was certain to result from the storage conditions. *Id.* at 1049. The court found coverage, reasoning that the relevant question was instead whether it was reasonable for the owner to store the apples under those storage conditions and finding that it was. *Id.* at 1049–50.

Here, it was reasonable for plaintiffs to choose to ship the oranges at 37–41 degrees Fahrenheit.  Plaintiffs had done so numerous times before, and they had no reason to believe that these oranges were any more susceptible to damage than those they had previously shipped.  The evidence shows that 37–41 degrees Fahrenheit was the normal and customary temperature for shipping in the industry.  Dkt. No. 34-1, JAF 14.  When Plaintiffs shipped the oranges, they had not knowingly changed a rind treatment designed to protect the oranges from the cold; instead, they had changed from a less to a more effective fungicide.  It was thus reasonable for Plaintiffs to believe the oranges would survive the journey in the same way that previous shipments had.  Even though the conditions resulted in damage to the oranges, the damage was neither foreseeable nor certain from the perspective of the parties at the time.  The loss is fortuitous.

B.

Defendant has another arrow in its quiver.  It contends that even if the loss is covered, the $500,000 deductible should apply once per voyage rather than once to the whole loss.  If Defendant is correct, the deductible would apply 57 different times and defeat any recovery because the loss from any single voyage is less than $500,000.

The insurance policy describes the deductible in section 13:

> A deductible of [$500,000] shall apply to each adjusted claim . . . .
> Each claim for loss or damage (regardless of number) arising from a covered event or arising during a single voyage or conveyance shall be adjusted as a single claim.  An "event" shall be defined as a single accident or occurrence or a series or sequence of accidents or occurrences arising from the same cause.

Dkt. No. 34-2 Ex. 4 ¶¶ 13.1–13.2.  The deductible provision contemplates a single "adjusted claim," which can consist of "a series or sequence of accidents or occurrences arising from the same cause."  The dispute here is over whether the "occurrences" of rind pitting "aris[e] from the same cause."

Defendant contends that the chilling injury arose from 57 independent causes on board 57 separate voyages.  It argues that the temperature on the different ships was the result of "hundreds of independent actions," which constitute "at most, the same mistake or error, repeated over and over" but do not arise from "the same cause."  Dkt. No. 34 at 31.  The Court sees no material

9

difference between Defendant's position that the chilling resulted from "the same mistake or error" and the conclusion that they arose from the "same cause."

The policy plainly contemplates that a single adjusted claim may include multiple occurrences that are joined together by "the same cause."  The Court construes the word "same" according to its ordinary meaning: "resembling in every relevant respect."  "Same." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/same (accessed Jan. 3, 2024); *see Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995) (insurance policy terms are interpreted according to their plain meaning and in their ordinary and popular sense).  The cause of the rind pitting on the 57 voyages—the cool refrigeration temperature—readily falls within the dictionary definition of "same."  The decision to set the temperature on each ship was not the result of 57 separate considerations; the temperature was set according to the standard shipping temperature of 37–41 degrees Fahrenheit for all oranges shipped.  Therefore, the adjusted claim includes the damages sustained to all the oranges on the 57 ships that were due to rind pitting that resulted from the refrigeration.

Defendant urges the Court to consider the potential future consequences of this conclusion, arguing that it could expose Defendant to endless, no-deductible liability to Plaintiffs.  Defendant worries that if Plaintiffs continue to ship oranges at the same temperature without TBZ (or a similar protective agent), then the resulting damage would have to be construed as "arising from the same cause."  This does not appear to be a genuine concern.   Plaintiffs are now on notice that shipping oranges over a certain distance at a temperature known to cause chilling injury without sufficient protection against the cold results in rind pitting.  A decision to ship them under the same conditions with that knowledge arguably would materially change the character of the cause of injury (such that it would not arise from the same cause).  In any event, Plaintiffs would face a substantial challenge to coverage on the grounds that the loss was anything other than "fortuitous."  *See Ingenco*, 921 F.3d at 814 (describing the fortuitous factors).

More fundamentally, the Court is charged with interpreting the policy according to its plain terms, even if the implications of the terms disfavor one of the parties.[4]  The meaning of "a series or sequence of accidents or occurrences

---

[4] Plaintiffs offer their own policy argument in favor of their interpretation.  They note that the $500,000 deductible is more than 12 times the expected maximum value of any single-voyage cargo—which would render the policy worthless to

arising from the same cause" seems plain enough as applied here.  If the language is not clear, Defendant is still not able to prevail.  In the insurance context, any ambiguity is to be construed in favor of the insured, as noted in the Ninth Circuit's affirmance of the *Sponholz* case cited by Defendant.  *Sponholz*, 866 F.2d at 1163 ("In California, ambiguous or unclear language in insurance policies is construed against the insurer and in favor of the insured.").

Accordingly, the loss in this case constitutes a single adjusted claim, and the $500,000 deductible applies once.

## IV.

Because Plaintiffs' loss is covered by the insurance policy and constitutes a single adjusted claim, the Court DENIES Defendant's motion and GRANTS Plaintiffs' cross-motion for summary judgment on all claims.  The parties shall meet and confer and file a proposed final judgment (agreed as to form) by no later than January 26, 2024.

Date: January 19, 2024

_____
Stanley Blumenfeld, Jr.
United States District Judge

---

Plaintiffs.  Dkt. No. 34-2 Ex. 6 at 002 (estimating the maximum value of each shipment to be $39,000).